## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ADVIA CREDIT UNION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| *Petitioner*, | Cause No. |
| v. | |
| BECKY-PINKSTON POLING, and CONSUMER FINANCIAL PROTECTION BUREAU, | |
| *Respondents*. | |

### MOTION TO COMPEL CONSUMER FINANCIAL PROTECTION BUREAU'S COMPLIANCE WITH SUBPOENA *DUCES TECUM*

Petitioner, Advia Credit Union ("Advia"), a Michigan state chartered credit union, is the named defendant in a putative class action lawsuit[1] pending in the United States District Court for the Western District of Michigan (the "Underlying Litigation"). For the reasons set forth in the accompanying Memorandum, Advia respectfully moves pursuant to Rule 45 of the Federal Rules of Civil Procedure for an order compelling the Consumer Financial Protection Bureau ("CFPB"), and its acting Director[2] to produce documents and a deponent for testimony in compliance with Advia Credit Union's Subpoena *Duces Tecum*.

---

[1] The lawsuit is pending in the United States District Court for the Western District of Michigan and is captioned *Becky Pinkston-Poling v. Advia Credit Union*, Case No. 1:15-cv-1208.

[2] The now former Director of the CFPB, Richard A. Cordray, resigned as Director of the CFPB on November 24, 2017. Because directorship of the CFPB is currently in question, references to the "Director" in Advia Credit Union's Subpoena *Duces Tecum* shall mean the acting Director of the CFPB, John "Mick" Mulvaney and/or Deputy Director, Leandra English. *See, e.g.*, https://www.washingtonpost.com/news/business/wp/2017/11/27/at-the-cfpb-two-

In accordance with D.D.C. LCvR 7(M), counsel for Advia met and conferred with counsel for the CFPB via telephone conference on October 31, 2017, November 6, 2017, November 15, 2017, and November 20, 2017.  During these conferences, Advia repeatedly sought concurrence in the relief sought in this motion, but did not obtain the CFPB's concurrence.  The CFPB opposes this motion.

---

acting-directors-show-up-to-take-command-one-brings-doughnuts-the-other-well
wishes/?utm_term=.1f33650ffb32.

## TABLE OF AUTHORITIES

### CASES

*Byrd v. District of Columbia*,
  259 F.R.D. 1 (D.D.C. 2009) .................................................................................................... 11

*Flanagan v. Wyndham Int'l Inc.*,
  231 F.R.D. 98 (D.D.C. 2005) ............................................................................................... 8, 10

*\* Jewish War Veterans of the United States of Am., Inc. v. Gates*,
  506 F. Supp. 2d 30 (D.D.C. 2007) ........................................................................................... 7

*Northrop Corp. v. McDonnell Douglas Corp.*,
  751 F.2d 395 (D.C. Cir. 1984) ........................................................................................... 10, 12

*Payne v. District of Columbia*,
  859 F. Supp. 2d 125 (D.D.C. 2012) ......................................................................................... 11

*Schreiber v. Society for Sav. Bancorp, Inc.*,
  11 F.3d 217 (D.C. Cir. 1993) .................................................................................................. 13

*Syron v. Federal Housing Fin. Agency*,
  1:14-mc-359, 2014 WL 12623047 (D.D.C. Dec. 31, 2014) ..................................................... 13

*\* U.S. Dep't of the Treasury v. Pension Benefit Guaranty Corp.*,
  301 F.R.D. 20 (D.D.C. 2014) ........................................................................................ 7, 11, 12

*United States v. Bryan*,
  339 U.S. 323 (1950) ................................................................................................................ 11

*United States v. Nixon*,
  418 U.S. 683 (1974) ................................................................................................................ 11

*\* Watts v. S.E.C.*,
  482 F.3d 501 (D.C. Cir. 2007) ............................................................................................. 8, 13

*\* Westinghouse Electric Corp. v. City of Burlington, Vt.*,
  351 F.2d 762 (D.C. Cir. 1965) ........................................................................................... 11, 12

### STATUTES

12 C.F.R. § 1005.17(d) ............................................................................................................ 3, 4

12 C.F.R. § 205 ............................................................................................................................ 3

12 U.S.C. § 5491(a) ..................................................................................................................... 4

12 U.S.C. § 5492(a) ..................................................................................................................... 4

12 U.S.C. § 5511(a) ..................................................................................................................... 4

12 U.S.C. § 5511(b)–(c) .............................................................................................................. 4

12 U.S.C. § 5512(b) ..................................................................................................................... 4

12 U.S.C. § 5514–5516 ................................................................................................................ 4

i

12 U.S.C. § 5562–5564..............................................................................................................4

15 U.S.C. § 1693.......................................................................................................................1

15 U.S.C. § 1693m(d) .........................................................................................................1, 3

## REGULATIONS

Electronic Fund Transfers, 74 Fed. Reg. 59033 (Nov. 17, 2009) ............................................3,6

## RULES

Fed. R. Civ. P. 26(b)(1)......................................................................................................6, 10

Fed. R. Civ. P. 26(b)(2)............................................................................................................8

Fed. R. Civ. P. 45............................................................................................................6, 13

Fed. R. Civ. P. 45(d)(2)(B) ......................................................................................................7

Fed. R. Civ. P. 45(d)(2)(B)(i) ..................................................................................................7

**MEMORANDUM OF LAW AND STATEMENT OF POINTS OF AUTHORITY IN
SUPPORT OF MOTION TO COMPEL CONSUMER FINANCIAL
PROTECTION BUREAU'S COMPLIANCE WITH SUBPOENA *DUCES TECUM***

**INTRODUCTION**

This Motion seeks critical evidence from the CFPB necessary to support Advia's

defenses against a $40 million putative class-action lawsuit.  Plaintiff claims, among other

things, that Advia failed to adequately disclose its overdraft policies as required under

Regulation E of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* (the "EFTA").  But,

the EFTA immunizes a financial institution from civil suit where the institution gives notice

using "an appropriate model clause" or acts "in good faith in conformity with any rule," 15

U.S.C. § 1693m(d).  Advia's conduct squarely meets those standards because it used *the*

overdraft disclosure form developed and promulgated by the CFPB—known as Model Form A-9

(hereinafter "the CFPB-authorized disclosure" or "Model Form A-9")—and thus should be

immune from plaintiff's suit.

The Court in the Underlying Litigation disagreed and as part of denying Advia's motion

to dismiss found that Advia should have altered the CFPB-authorized disclosure.  In other words,

the Court is of the view that Advia is not entitled to safe harbor protection, despite its

indisputable use of Model Form A-9.  Because the Court's conclusion is wrong, Advia must seek

evidence from the CFPB to create a record to defend itself.  Moreover, from Advia's

conversations with the CFPB preceding this Motion, Advia is confident that the CFPB's position

on the issues is consistent with Advia's position, but the CFPB refuses to go on the record and

say so now.

The CFPB should be compelled to provide documents and testimony because (1) the

information Advia requests is dispositive of the claims made against Advia, (2) the information

1

is solely in the CFPB's possession, (3) the CFPB agrees with Advia's position, and (4) the requests are narrowly tailored and reasonable such that they impose little burden on the CFPB.

It is important to note that Advia's subpoena is not intended to harvest reams of documents from the CFPB.  Instead, Advia made targeted requests aimed at gathering evidence Advia reasonably knows to be true.  Advia's requests will not cause the CFPB to bear any undue burden.

For these reasons, and those below, this Court should compel the CFPB to comply with Advia's subpoena for a deposition of the CFPB Director and production of documents.

## BACKGROUND

### A.  The Underlying Litigation

In the Underlying Litigation, Plaintiff, Becky Pinkston-Poling ("Plaintiff"), alleges that Advia (1) failed to adequately disclose its overdraft policy as required under the EFTA prior to charging Plaintiff overdraft fees; and (2) breached its standard member account agreement by charging Plaintiff overdraft fees when her so-called account "ledger balance" was positive, but her available balance was negative.  *See* Ex. A.   Plaintiff seeks to certify two classes of Advia members (a "Regulation E" class and a so-called "Positive Balance" class) and claims class damages in excess of $40 million.  *See* Ex. B at 28.  Plaintiff's claims are meritless.

### B.  Plaintiff's Claim and the EFTA's Opt-In Notice Form—Model Form A-9

Financial institutions, like Advia, are required to obtain a member's "affirmative consent" before charging overdraft fees in connection with ATM and non-recurring debit card

transactions.[3] Regulation E provides that such "affirmative consent" must be secured through use of an opt-in notice that is "substantially similar" to Model Form A-9.[4]

The Court in the Underlying Litigation has already found that "Advia's Opt-in Agreement is substantially similar to Model Form A-9[.]" *See* Ex. C at 3. Despite Advia's use of the CFPB-authorized disclosure, Plaintiff claims that Advia violated Regulation E because Advia was required to, but did not, *alter* Model Form A-9 to more precisely and specifically describe Advia's overdraft policy. Plaintiff's position, however, is contrary to Regulation E and Advia's obligation to comply with it.

### C. Advia's Defenses and the EFTA's Safe Harbor Provision

The EFTA immunizes financial institutions from civil liability for an alleged failure to make proper disclosures if the institution acted "in good faith in conformity with any rule," or "if [the] institution utilized an appropriate model clause[.]" 15 U.S.C. § 1693m(d) (hereinafter the "Safe Harbor Provision"). Advia contends that it is immune from Plaintiff's suit under the Safe Harbor Provision because Advia used an opt-in notice that is essentially identical to Model Form A-9 and has at all times acted in good faith conformity with the CFPB's rules. Plaintiff—and the Court in the Underlying Litigation—disagree with Advia.

According to the Court, Advia is not entitled to immunity under the Safe Harbor Provision because "Pinkston-Poling is not alleging that Advia failed to make a disclosure or to disclose something in a proper form. Instead, she alleges that Advia 'fail[ed] to truthfully and accurately describe … the conditions under which an overdraft fee will be assessed.'" *See* Ex. D

---

[3] Regulation E, 12 C.F.R. § 205. The EFTA is implemented through Regulation E. The CFPB assumed rule-making authority under the EFTA from the Federal Reserve Board after passage of the Dodd-Frank Wall Street Reform and Consumer Protection Act.
    [4] That model was developed and promulgated by the Federal Reserve Board after several rounds of consumer comprehension testing. *Id*. § 1005.17(d); 74 Fed. Reg. at 59036.

at 5.  In the Court's view, therefore, the CFPB-authorized disclosure (Model Form A-9), fulfills

the requirement for the "form," but not the "content" of the statutory notice.  *See* Ex. C at 3.

The Court's conclusion that the CFPB-authorized disclosure satisfies only the "format"

of the required notice and not the "content" flatly contradicts that the Regulation actually says

what the **"content"** *and* **"format"** must—and must not—be to satisfy the statutory notice

requirements:

> (d) **Content and format**. The notice required by paragraph (b)(1)(i) of this
> section *shall be substantially similar to* Model Form A-9 set forth in appendix A
> of this part, include all applicable items in this paragraph, *and may not contain
> any information not specified* in or otherwise permitted by this paragraph.

12 C.F.R. § 1005.17(d) (emphasis added).  Advia's conduct, therefore, falls squarely within the

Safe Harbor Provision.

### D.  The CFPB and the Director

Title X of the Dodd-Frank Act—the Consumer Financial Protection Act ("CFPA")—

established the CFPB to "regulate the offering and provision of consumer financial products or

services under the Federal consumer financial laws," 12 U.S.C. § 5491(a), and "to implement

and . . . enforce Federal consumer financial law[.]" *Id*. § 5511(a); *see also id.* §§ 5492(a),

5511(b)–(c).  The CFPA vests the CFPB with broad rulemaking, supervisory, investigatory,

adjudicatory, and enforcement authority. 12 U.S.C. §§ 5512(b), 5514–5516, 5562–5564).

Richard A. Cordray is the now former Director of the CFPB.  Prior to his resignation

from the CFPB, Mr. Cordray made numerous public statements regarding overdraft fees relevant

to Advia's defenses in the Underlying Litigation.  For example, on August 4, 2017, Mr. Cordray

made prepared remarks to reporters that stated:  "[a]n overdraft occurs when consumers lack the

funds in their account to cover a transaction, but the bank or credit union pays it anyway."[5] Ex. E

at 1. This is the same definition of overdraft that is contained in the CFPB-authorized disclosure

and Advia's opt-in notice. Mr. Cordray also stated that the CFPB is in the process of replacing

Model Form A-9 with new forms that are clearer:

> So the Consumer Bureau is unveiling model disclosure prototypes that, if
> adopted, would replace the existing model form that financial institutions can use
> for consumers who are evaluating this choice. We believe these prototype forms,
> like our *Know Before You Owe* disclosures for mortgages and prepaid accounts,
> would help consumers better understand an important financial decision.

*Id*. at 2.

### E.  The Subpoena to the CFPB

On August 15, 2017, Advia provided notice of its issuance of a Subpoena to Testify at a

Deposition in a Civil Action (the "Subpoena") to the CFPB and the Director.  *See* Ex. F.  The

Subpoena requested that the Director sit for deposition and that the CFPB produce documents

relevant to Advia's defenses in the Underlying Litigation.  *Id*.  The Subpoena was served on the

CFPB on August 31, 2017.  *See* Ex. G.  Advia generally wants to discover whether: (1) the

CFPB expects financial institutions to alter the CFPB-authorized disclosure and (2) financial

institutions act in good faith under Regulation E when they use the CFPB-authorized disclosure.

### F.  The CFPB Agrees with Advia About Regulation E But Refuses to Comply with the Subpoena

On September 5, 2017, the CFPB responded by reciting several boilerplate objections to

the Subpoena and requesting that Advia withdraw it.  *See* Ex. H.  Advia replied in writing and

---

[5] The CFPB has routinely made public comments about overdraft fees.  In 2013, the
CFPB issued a whitepaper entitled "CFPB Study of Overdraft Programs." *See*
http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf.  Its website
contains numerous articles, studies, and statements concerning overdraft fees and how to avoid
them.

discussed the Subpoena on several occasions with counsel for the CFPB to secure the CFPB's compliance. *See*, *e.g.,* Ex. I; Ex. J.

In an effort to reach an agreement, Advia offered the CFPB a narrowed list of document requests, explained the nature of the questions it sought to pose to the CFPB at deposition and proposed to depose a person, other than the Director, of sufficient seniority to testify on behalf of the CFPB. Ex. J at 4.  Remarkably, during those discussions, counsel for the CFPB said the CFPB *agrees* with Advia's position that use of Model Form A-9 satisfies the regulation's requirement for a proper opt-in notice both in form ***and content***.[6]  Though the CFPB explained that it "sympathized" with Advia and would consider filing an *amicus curiae* brief if Advia ever filed an appeal, it refuses to provide any discovery to Advia now.[7]  Advia should not be required to accept the CFPB's "sit around and see" approach.  The evidence Advia seeks is material to its defenses in the Underlying Action and production of it now will lead to a quicker, less costly and more efficient outcome.

## MOTION STANDARD

Federal Rule of Civil Procedure 45 authorizes court-issued subpoenas to obtain discovery from third parties.  The Federal Rules of Civil Procedure provide that litigants may obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and that is "proportional to the needs of the case…"  Fed. R. Civ. P. 26(b)(1).  The general policy favoring broad discovery is particularly applicable where, as here, the court reviewing a discovery compliance matter "has less familiarity with the intricacies of the governing

---

[6] Counsel for the CFPB indicated 74 Fed. Reg. at 59,036 as the best publically available support of the CFPB's view and Advia's position.

[7] The CFPB frequently submits amicus briefs to "provide the courts with the CFPB's views on significant consumer financial protection issues and help ensure that consumer financial protection statutes and regulations are correctly and consistently interpreted." https://www.consumerfinance.gov/policy-compliance/amicus/.

substantive law than does the court overseeing the underlying litigation." *U.S. Dep't of the Treasury v. Pension Benefit Guaranty Corp.*, 301 F.R.D. 20, 25 (D.D.C. 2014) (citing *Jewish War Veterans of the United States of Am., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007)).

Pursuant to Fed. R. Civ. P. 45(d)(2)(B), a party receiving a subpoena to produce documents or tangible things may object to the subpoena "before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Upon receiving objections, the serving party may then move the court for an order compelling production after noticing the commanded party.  *See id*.  The motion must be filed in "the court for the district where compliance is required[.]" Fed. R. Civ. P. 45(d)(2)(B)(i).

Once the moving party explains how the requested information is relevant, the objecting party bears the burden "to explain why discovery should not be permitted." *Jewish War Vets.* at 42.  The quashing of a subpoena is an "extraordinary measure" and courts should be loath to grant such relief where "other protection of less absolute character is possible." *Pension Benefit Guaranty Corp.*, 301 F.R.D. at 25 (citations omitted).  In this case, the CFPB's compliance should be ordered and any efforts to quash or modify the Subpoena rejected in their entirety.

**ARGUMENT**

**I.   THE SUBPOENA IS NARROWLY TAILORED AND REASONABLY PROPORTIONAL IN SCOPE**

The CFPB should be compelled to make the Director available for deposition and produce documents (or state that no such documents exist) as requested by Advia.  The CFPB's primary objection is that the Subpoena is unduly burdensome, but it is not.  The CFPB objects to producing documents responsive to the Subpoena because it says that the request for documents would subject the CFPB to "substantial burden."  The CFPB claims that responding to the Subpoena will require the CFPB to "conduct an expansive search and to expend substantial

resources locating responsive documents…" *See* Ex. H at 2.   The CFPB's stated concerns are speculative at worst, and overstated at best.

In assessing whether a burden is undue under Rule 45, courts look to the standards articulated in Rule 26(b)(1) and (2) of the Federal Rules of Civil Procedure.  *See Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007).  This Court has observed that "[i]n accordance with these considerations, courts generally employ a balancing test, weighing the burdensomeness to the [party on which the subpoena was served] against the [need of the party which served the subpoena] for, and the relevance of, the information being sought." *Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 102–03 (D.D.C. 2005) (citations omitted).   Here, employing such a balancing test weighs heavily in favor of compelling the CFPB to comply with the Subpoena.

**A.  The CFPB is the Only Source of Evidence Relevant to Advia's Defenses**

Plaintiff alleges that Advia violated Regulation E by failing to alter Model Form A-9 to more specifically describe Advia's overdraft policy.  One of Advia's defenses is that the CFPB and Regulation E actually prohibit Advia from altering Model Form A-9 (*See* 12 C.F.R. § 1005.17(d)).  And, as the federal regulator of credit unions like Advia, the CFPB intended to immunize financial institutions from civil liability that make overdraft disclosures that are substantially similar to Model Form A-9.  With this motion, Advia seeks evidence from the CFPB directly relevant to support that core defense in the Underlying Litigation.  Finally, from its conversations with the CFPB about the Subpoena, Advia understands that the CFPB is capable of providing evidence that Advia could use in the Underlying Litigation to seek summary judgment on all liability claims based upon an alleged violation of Regulation E.  The CFPB should be compelled to comply with the Subpoena.

To that end, the Director is the best source on the CFPB's public statements regarding overdrafts and Model Form A-9. These statements are directly relevant to Advia's defenses in the Underlying Litigation. For example, the Director's description of when an overdraft occurs is identical to Advia's description in its opt-in notice. The Director indicated that the CFPB intends to replace Model Form A-9 with as many as four different opt-in notices.[8] *See* Ex. E. The fact remains, however, that at all relevant times in the Underlying Litigation, only one CFPB-authorized disclosure was permitted for use. The Director's testimony consistent with his prior public statements would affirm the proposition that, currently, the CFPB expects credit unions like Advia to use the existing Model Form A-9 unless and until new versions are promulgated.

Advia offered to take measures to minimize any burden on the Director, including limiting the Director's deposition to two hours in length and taking the deposition on a date and at a location convenient for the Director. *See* Ex. I at 2. Moreover, Advia has offered to allow the CFPB to identify a qualified alternate designee to testify concerning the topics in the Subpoena, but the CFPB has refused. *See* Ex. J at 4. The CFPB should be required to make the Director available for deposition, or, at minimum, designate an individual of sufficient authority to testify on its behalf.

To effectively depose the Director, Advia must also have access to any documentary evidence from the Agency showing whether the CFPB requires financial institutions to alter Model Form A-9; whether the CFPB has ever taken any enforcement action regarding Model Form A-9; whether the CFPB has issued advisories to financial institutions instructing them to

---

[8] *CFPB Unveils Prototypes of "Know Before You Owe" Overdraft Disclosure Designed to Make Costs and Risks Easier to Understand* (Aug. 4, 2017), https://www.consumerfinance.gov/about-us/newsroom/cfpb-unveils-prototypes-know-you-owe-overdraft-disclosure-designed-make-costs-and-risks-easier-understand/.

alter Model Form A-9; and why the CFPB is proposing to replace Model Form A-9 with four new opt-in notice forms.  This includes information about the CFPB's public comments and internal discussions regarding Model Form A-9 and overdrafts.  This information is key evidence in support of Advia's good-faith reliance on the language of Regulation E.  It will be used to prove that the CFPB does not expect, nor does Regulation E contemplate (or even permit), financial institutions to alter their overdraft opt-in notices to materially vary from the CFPB-authorized disclosure.   Advia's narrowly tailored Subpoena for deposition testimony and documents is plainly relevant in the Underlying Litigation to a degree that heavily outweighs any claimed burden by the CFPB.

### B.  The CFPB Will Not Be Unduly Burdened in Responding to the Subpoena

The Federal Rules of Civil Procedure protect a litigant's right to relevant evidence by strongly favoring full discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case [.]" Fed. R. Civ. P. 26(b)(1).   Where, as here, the "court with jurisdiction over a discovery dispute for an action pending in a different district…has limited exposure to and understanding of the primary action[,]" it "[s]hould hence be cautious in determining relevance of evidence, and in case of doubt should err on the side of permissive discovery." *Flanagan*, 231 F.R.D. 98, 103. A subpoena is unduly burdensome only when it is "unreasonable or oppressive" in the context of all the circumstances of the case.  *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984).

Neither the CFPB's status as a government agency nor the Director's status as a high-ranking official create an exception from these bedrock third-party discovery principles.[9]

The Subpoena requests that the CFPB produce three succinct categories of documents relating to Advia's defenses in the Underlying Litigation.[10]  Like the Treasury Department in *Pension Benefit Guaranty Corp.*, here, the CFPB broadly asserts that the requests are unduly burdensome because they "would require the [CFPB] to conduct an expansive search and to expend substantial resources locating responsive documents and reviewing them for personally identifiable information (PII), privileged material, and other material that is protected from disclosure in discovery."  *See* Ex. H at 2.  The CFPB's claim of undue burden is therefore identical to the claim of undue burden rejected by the court in *Pension Benefit Guaranty Corp.*

---

[9] *United States v. Bryan*, 339 U.S. 323, 331 (1950) ("[T]he public ... has a right to every man's evidence.'"); *United States v. Nixon*, 418 U.S. 683, 710 (1974) (finding exceptions "to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth."); *Pension Benefit Guaranty Corp.*, 301 F.R.D. 20 (finding that Treasury's objection to the volume of documents requested and need to review those documents for privilege did not meet the high bar for burdensomeness required to quashing a subpoena); *Westinghouse Electric Corp. v. City of Burlington, Vt.*, 351 F.2d 762, 766 (D.C. Cir. 1965) (holding that trial court erred in quashing subpoena where, as here, the requesting party offered to accommodate the Government by narrowing the scope of requested information); *Byrd v. District of Columbia*, 259 F.R.D. 1, 7 (D.D.C. 2009) ("Unless the movant can show that the need for the protective order is 'sufficient to overcome plaintiffs' legitimate and important interests in trial preparation,' high-ranking officials are subject to deposition… [P]rotective orders that completely prohibit a deposition should be granted only as an 'extraordinary measure which should be resorted to only in rare occasions'") (citations omitted); *Payne v. District of Columbia*, 859 F. Supp. 2d 125, 136 (D.D.C. 2012) (citations omitted) (allowing deposition of a high-ranking executive branch officials when "they have some personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere.").

[10] *See* Ex. F. (1) correspondence sent to or received by CFPB representatives since January 1, 2008, which include one or more of 18 search terms relating to overdrafts, balance calculation methods, opt-in notices and Advia; (2) documents relating to model overdraft opt-in forms developed, proposed, tested, reviewed, or adopted by the CFPB for the period of January 1, 2008 to the present date; and (3) documents relating to perceived suitability or legality of any opt-in form or overdraft disclosure of the CFPB or its predecessor.

11

Moreover, Advia is interested in the qualitative, not quantitative, nature of evidence it is seeking from the CFPB.  As was the case in *Westinghouse,* although Advia believes its original document requests are reasonable and should be answered, Advia has attempted to alleviate any actual burden on the CFPB by narrowing the scope of information requested to 13 specific document requests.  *See* Ex. J at 2-3.  Further, Advia firmly believes that the CFPB has no documents responsive to many of Advia's requests.  If that is the case, a simple written statement confirming the lack of any responsive documents would provide much of the critical evidence Advia seeks at very low cost to the CFPB.  In light of the foregoing, the CFPB's speculative claims of burden do not come close to shifting the need-burden balance in its favor to justify the CFPB's non-compliance.

## II.   THE CFPB'S OTHER OBJECTIONS DO NOT JUSTIFY NON-COMPLIANCE

In addition to burden, the CFPB objects that evidence requested is privileged and Advia has not complied with the CFPB's *Touhy* rules.  *See* Ex. H.  Neither objection justifies the CFPB's non-compliance.

### A.  CFPB Must Provide A Privilege Log For Documents Its Claims Are Privileged

The CFPB loosely contends that the requested documents are privileged.  "There is no basis for [a] Court to impose the 'extraordinary measure' of quashing a subpoena, *Flanagan*, 231 F.R.D. at 102, based on a 'purely speculative' privilege claim." *Pension Benefit Guaranty Corp.*, 301 F.R.D. at 28–29 (citing *Northrop Corp.*, 751 F.2d at 405).

The CFPB cannot seriously contend that the core of the evidence Advia seeks is privileged—virtually all of it is based upon public statements and regulations.  However, if the CFPB has responsive documents that it contends are privileged it should provide to Advia "an index correlating the agency's assertion of privilege to the evaluative portions of the documents,

much as it does when an agency asserts that a document requested pursuant to the Freedom of Information Act is exempt from disclosure." *See Schreiber v. Society for Sav. Bancorp, Inc.*, 11 F.3d 217, 221, 304 (D.C. Cir. 1993).  Advia can then adequately address the CFPB's privilege claims.   Simply put, generalized privileged claims cannot justify quashing Advia's subpoena. *Syron v. Federal Housing Fin. Agency*, 1:14-mc-359, 2014 WL 12623047, at \*2 (D.D.C. Dec. 31, 2014) ("The party asserting privilege bears the burden of presenting sufficient facts to establish the privilege for each document over which privilege is claimed.").

## B.  The CFPB's *Touhy* Regulations Are Inapplicable to Advia's Subpoena

The CFPB's *Touhy* regulations provide no basis to quash Advia's Subpoena.  Instead, when a proper Rule 45 subpoena has been served on a government agency, "Rule 45 supplies the standards under which district courts assess agency objections to the subpoena." *Watts*, 482 F.3d at 508.  It is well-settled that *Touhy* regulations do not create a special privilege for the government or create a legal basis to withhold discovery. *See id.* at 508–09.

Furthermore, although the CFPB's *Touhy* regulations are inapplicable here, Advia has, in fact, complied with *Touhy* through its correspondence and frank conversations with the CFPB's counsel.  *See* Exs. I and J.

## RELIEF REQUESTED

For all of the foregoing reasons, Advia respectfully requests that this Court order the

CFPB and the Director to comply in all respects with its Subpoena.

Dated: December 6, 2017

Respectfully submitted,

*/s/ Todd M. Stenerson*
Todd M. Stenerson (Bar No. 462110)
Rachel E. Mossman (Bar No. 1016255)
(*application for admission to D.D.C.
 to be filed*)
SHEARMAN & STERLING LLP
401 9th Street
Suite 800
Washington, DC 20004
202-508-8000
Todd.Stenerson@shearman.com

*Attorneys for Advia Credit Union*

*Of Counsel for Howard & Howard PLLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2017, I caused the foregoing paper to be filed with

the Clerk of the Court and notifications of this filing to be sent via email and overnight delivery

to:

Julia Szybala
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Julia.Szybala@cfpb.gov

Richard D. McCune
McCune Wright Arevalo, LLP
3281 East Guasti Road, Suite 100
Ontario, CA 91761
rdm@mccunewright.com


        */s/ Rachel E. Mossman*
        Rachel E. Mossman
        Shearman & Sterling LLP
        401 9th St NW
        Washington, DC  20004
        202-508-8000
        Rachel.Mossman@shearman.com